IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| SCHNABEL FOUNDATION COMPANY, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. PX-16-0895 |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA, | * | |
| | * | |
| Defendant. | * | |

******

**MEMORANDUM OPINION**

Pending before the Court and ripe for resolution in this insurance action are the cross-motions for summary judgment filed by Plaintiff Schnabel Foundation Company ("Schnabel") (ECF No. 71) and Defendant National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union") (ECF No. 77). A hearing was held on May 17, 2018. After the hearing, at Schnabel's request, the Court permitted additional limited briefing. (ECF Nos. 90, 91.) For the reasons below, the Court GRANTS National Union's motion and DENIES Schnabel's motion.[1]

## I. BACKGROUND

### A. Schnabel's Support of Excavation Work

At issue in this case is who must pay the costs associated with revising work and weathering project delays caused by a building excavation that, unfortunately, did not go according to plan. The project was the construction of a 17-story residential apartment building

---

[1] Also pending are three motions to strike, all filed by National Union (ECF Nos. 72, 73, & 74). Because the Court will grant summary judgment in favor of National Union, these motions are denied as moot.

1

at 4918 St. Elmo Avenue, Bethesda, Maryland. The building owner, Bainbridge, hired Turner Construction Company ("Turner") as the general contractor for the project. Turner then hired Schnabel as a subcontractor to provide sheeting and shoring or a "Support of Excavation" ("SOE") system, which would stabilize and support the surrounding buildings while necessary excavation occurred. *See* ECF No. 71-74 at 6. The project site abutted a number of properties, including a property owned by White Flint Realty Group Limited Partnership, which included a restaurant, dance studio, and other commercial units ("White Flint property").

In connection with the project, Turner purchased from Liberty Mutual Insurance a primary general liability policy with a two-million dollar policy limit, and from National Union an excess policy with a $25 million limit. ECF Nos. 71-3, 71-4. Schnabel was an additional insured under both policies. ECF No. 71-54 at 4. Schnabel also purchased separate builder's risk insurance.

On September 29, 2011, Schnabel began work on the project. ECF No. 71-74 at 6. On December 5, 2011, while Schnabel was installing a soldier pile as part of the SOE work, the floor of the White Flint property buckled or "heaved" which caused physical damage to that property.[2] ECF No. 71-7 at 2; *see* ECF No. 71-1 ¶ 18. Shortly thereafter, the White Flint property and other adjoining properties reported additional physical damage. S*ee* ECF No. 71-30 at 2–4. After independently evaluating the site, Montgomery County issued a Stop Work Order on March 7, 2012, and the residents and tenants of the White Flint property were forced to evacuate for safety reasons. ECF Nos. 71-16, 71-17, 71-21.

Thereafter, and until July 19, 2012, Schnabel revised its SOE and related work to make safe the project site. *See* ECF No. 71-21 at 3. Schnabel's SOE work concluded on November 8,

---

[2] Initially, Schnabel's work was scheduled to be completed in November 2011. Neither party explains why Schnabel's work was not completed by this time. All events giving rise to this lawsuit occur after November 2011. Schnabel's work ultimately was completed on November 8, 2012.

2

2012, ECF No. 71-13 at 2, and Turner's work concluded in July 2014, roughly 12 months after the original project completion dates under the Bainbridge-Turner contract, ECF No. 71-75 at 24.

### B. Litigation and Coverage Disputes

As a result of Schnabel's SOE work and the damage to the third-party properties, several lawsuits were filed. Liberty Mutual ultimately exhausted its two-million dollar limit covering various claims. National Union also paid approximately $12 million in claims related to the White Flint property, other adjoining properties, and associated defense costs. *See* ECF No. 71-1 ¶¶ 39, 42. This case does not involve any of those claims.

Instead, this cause of action arises from claims made by and among Bainbridge, Turner, and Schnabel relating to project delay costs caused by Schnabel's SOE work and the resulting Stop Work Order, as well as for costs for the work to modify Schnabel's SOE so that the Bainbridge project could proceed. First, Bainbridge demanded that Turner reimburse it approximately $6.7 million for construction delay costs. *See* ECF No. 71-36 at 3. National Union denied coverage on this claim. ECF No. 71-39 at 2. Bainbridge and Turner then settled the claim for $3 million, and Bainbridge assigned its remaining rights to Turner. ECF Nos. 71-61–71-66. Second, Turner demanded that Schnabel pay the costs of Schnabel's additional SOE work as well as indemnify Turner for the Bainbridge claim, for a total claim of approximately $17 million. *See generally* ECF Nos. 71-42, 71-45. National Union likewise denied coverage for this claim. ECF No. 71-54 at 2. Schnabel and Turner then settled this claim for $5 million, which included an assignment of Turner's rights to Schnabel. ECF No. 71-67 at 11. Under its separate builders risk policy, Schnabel ultimately recovered approximately $4.25 million. *See* ECF No. 71-76 at 16.

### C. The National Union Policy

Central to this dispute is the coverage terms of the National Union policy. In relevant part the policy provides coverage for "those sums . . . that the Insured becomes legally obligated to pay as damages by reason of liability imposed by law because of . . . Property Damage," when the property damage "is caused by an Occurrence" during the policy period. ECF No. 71-3 at 7. "Property damage" is defined in the policy as (1) "physical injury to tangible property, including all resulting loss of use of that property," or (2) "loss of use of tangible property that is not physically injured." ECF No. 71-3 at 29. An "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." ECF No. 71-3 at 27.

The same policy limits coverage via several exclusions. Relevant to the parties' cross-motions is Exclusion D, entitled "Damage to Impaired Property or Property Not Physically Injured." This provision excludes from coverage "damage to Impaired Property or property that has not been physically injured" that arises out of either (1) "a defect, deficiency, inadequacy or dangerous condition" in the work of the insured or (2) "a delay or failure" by the insured or anyone acting on the insured's behalf "to perform a contract or agreement in accordance with its terms" ("Exclusion D" or the "Impaired Property exclusion"). ECF No. 71-3 at 12. National Union cited to Exclusion D, among other provisions, in denying coverage for the above-described claims. ECF No. 71-39 at 7; ECF No. 71-54 at 5.

After settling the claims, Schnabel brought this breach of contract action against National Union.[3] *See* ECF No. 2 at 8–9. Schnabel then moved for summary judgment, arguing that the claimed losses are covered by the policy and that no policy exclusions apply. National Union, by contrast, argues that none of the claimed damages fall under the policy's initial grant of

---

[3]  Schnabel brings the action on behalf of itself and on behalf of Turner.

coverage, and even if coverage exists, the claimed losses are excluded. As more fully discussed below, the Court grants summary judgment in National Union's favor because Exclusion D of the policy bars coverage.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the Court, construing all evidence and drawing all reasonable inferences in the light most favorable to the non-moving party, finds no genuine dispute exists as to any material fact, thereby entitling the movant to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see In re Family Dollar FLSA Litig.*, 637 F.3d 508, 512 (4th Cir. 2011). Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In responding to a proper motion for summary judgment, the party opposing summary judgment must present evidence of specific facts from which the finder of fact could reasonably find for him or her." *Venugopal v. Shire Labs.*, 334 F. Supp. 2d 835, 840 (D. Md. 2004), *aff'd sub nom. Venugopal v. Shire Labs., Inc.*, 134 F. App'x 627 (4th Cir. 2005) (citing *Anderson v. Liberty Lobby,* 477 U.S. 242, 252 (1986); *Celotex*, 477 U.S. at 322–23). The party opposing summary judgment "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Othentec Ltd. v. Phelan*, 526 F.3d 135, 140 (4th Cir. 2008) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)). Where a party's statement of a fact is "blatantly contradicted by the record, so that no reasonable jury could believe it," the Court will credit the record over the averred fact. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III. DISCUSSION

Although the summary judgment record is voluminous, the central issue for the Court's consideration is straightforward: whether the plain language of the National Union policy covers Schnabel's claimed damages and, if so, whether any of the policy exclusions bar recovery. The parties agree that New Jersey law applies to this case.

Under New Jersey law, the Court construes coverage terms in the policy broadly and exclusions narrowly so as to favor coverage. *Phibro Animal Health Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 446 N.J. Super. 419, 428 (2016). The Court also is mindful of the need to enforce insurance contracts consistent with their underlying purposes. *Cypress Point Condominium Ass'n, Inc. v. Adria Towers, L.L.C.*, 226 N.J. 403, 415 (2016) (*Cypress Point II*). The National Union policy is known as a commercial general liability ("CGL") policy, the primary purpose of which is to protect the insured against liability to third parties, as opposed to indemnifying the insured for business costs associated with properly performing its work or adequately fulfilling contractual obligations. *See Cypress Point II*, 226 N.J. at 408 n.1, 416; *Ohio Cas. Ins. Co. v. Island Pool & Spa, Inc.*, 418 N.J. Super. 162, 174 (2011) (CGL policies "indemnify an insured against liability due to be paid to others for harm caused by the insured"; liability for "business torts and other commercial matters" are not intended to be covered (internal quotation marks and citation omitted)).

With these principles in mind, the Court turns to whether Schnabel's claimed damages are covered under the National Union policy.

### 1. Coverage of Claims

Schnabel seeks coverage for damages that fall into essentially two categories: (1) costs associated with revising Schnabel's SOE work to meet its obligations, and (2) costs arising out of

6

Schnabel's insufficient or defective SOE work, including construction delay costs. The first category of costs is not covered by the National Union policy as a matter of law. New Jersey courts have made clear that "cost of replacing . . . defective work," as distinct from costs of repairing damage *caused* by faulty work, "are considered a business risk associated with faulty workmanship." *Cypress Point Condo. Ass'n, Inc. v. Adria Towers, L.L.C.*, 441 N.J. Super. 369, 379 (2015), *aff'd*, 226 N.J. 403 (2016) (*Cypress Point I*); *see Cypress Point II*, 226 N.J. at 420–21 (summarizing cases holding that cost of replacing faulty work is not covered by CGL policies, distinguishing question of whether consequential damages caused by faulty workmanship are covered). Notably, Schnabel conceded that the claimed losses included costs incurred to rectify its SOE work necessary for the project to resume. Accordingly, to the extent that Schnabel seeks coverage for the costs to repair the initial deficient SOE work, those are not covered by the National Union policy.

Schnabel argues that *Cypress Point I*, 441 N.J. Super. 369, and *Cypress Point II*, 226 N.J. 403, support the proposition that all claimed damages in this case are consequential and thus covered. The Court disagrees. In the *Cypress Point* cases, the New Jersey courts reviewed whether a CGL policy covered consequential damages in the form of property damage to a condominium's common areas that flowed from the contractor's faulty installation of the condominium building's roof. In this respect, the *Cypress Point* cases primarily were concerned distinguishing third party losses, which are typically covered in CGL policies, from those costs associated with repairing or replacing the contractor's insufficient work, which are not covered. Accordingly, the New Jersey Supreme Court held only that negligent work by a subcontractor could constitute an occurrence that gives rise to *other* covered property damage. 226 N.J. at 287–88. The *Cypress Point* cases, however, re-affirmed the well-established principle that CGL

7

policies do not cover "business risk" losses, or costs associated with repairing or replacing a contractor's defective work. *See* 118 A. 3d. at 1086. The Court will follow this principle here.

With regard to the second category of costs that Bainbridge and Turner incurred due to construction, the Court will construe coverage in Schnabel's favor. These costs arguably arise from loss of use of the construction site that arose "because of" property damage. Accordingly, because the Court must construe provisions broadly in favor of coverage, the Court finds that these claims are initially covered by the National Union policy, and turns next to whether the damages fall under one of the policy's enumerated exclusions.

   2. **Exclusion D**

National Union argues that the policy's Exclusion D bars recovery. This provision reads:

This insurance does not apply to Property Damage to Impaired Property or property that has not been physically injured, arising out of:

   1. a defect, deficiency, inadequacy or dangerous condition in Your Product or Your Work; or
   2. a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to Your Product or Your Work after it has been put to its intended use.

ECF No. 71-3 at 12.

"Impaired Property," in turn, is defined as:

[T]angible property, other than Your Product or Your Work, that cannot be used or is less useful because:

   1. it incorporates Your Product or Your Work that is known or thought to be defective, deficient, inadequate or dangerous; or
   2. you have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

   1. the repair, replacement, adjustment or removal of Your Product or Your Work; or

8

2. your fulfilling the terms of the contract or agreement.

ECF No. 71-3 at 24–25.[4]

The policy also defines "Your Work" as:

1. work or operations performed by you or on your behalf; and
2. materials, parts or equipment furnished in connection with such work or operations.

ECF No. 71-3 at 30.

"When interpreting language in an insurance policy, the words used should be given their ordinary meaning." *Ohio Cas. Ins. Co.*, 418 N.J. Super. at 168 (citing *Voorhees v. Preferred Mut. Ins. Co.*, 128 N.J. 165, 175 (1992)). The Court must first determine if the claims in this case are because of property damage either to impaired property or to property that has not been physically injured. Under either scenario, if the losses "ar[ose] out of "a defect, deficiency, inadequacy or dangerous condition of . . . Your Work," exclusion D applies.[5]

First, as to property that has not been physically injured, the record evidence supports that the Bainbridge property was not "physically injured" as the term is understood. Schnabel's SOE work caused soil movement, which caused damage to the White Flint properties and others, including buckling and cracked floors. By contrast, the Bainbridge site was in its excavating infancy and itself was not physically "injured." As such, this prong of Exclusion D is met.

Alternatively, even if the Court views this case as involving "property damage to impaired property" rather than to property not physically injured, this requirement of Exclusion

---

[4] National Union also contends that Exclusion E.6, which excludes damages for "that particular part of any property that must be restored, repaired, or replaced because Your Work was incorrectly performed on it," applies. Because the Court finds that Exclusion D applies, the Court declines to reach whether Exclusion E.6 also applies.

[5] Schnabel attempts to convince this Court that Exclusion D applies only to "property not physically injured." *See, e.g.*, ECF No. 91 at 2. This interpretation contravenes the plain language of Exclusion D which expressly covers either "property damage to impaired property *or* property not physically injured." *See Phibro*, 446 N.J. Super. at 444–45 (impaired property exclusion bars coverage to property not physically injured *or* impaired; exclusion operates to bar coverage to property that has been physically damaged if it cannot be used or is less useful and can be restored to use).

9

D is met. Impaired property is tangible property "that cannot be used or is less useful" because "it incorporates . . . Your Work that is known or thought to be defective, deficient, inadequate or dangerous," provided that the property "can be restored to use by the repair, replacement, adjustment or removal of . . . Your Work." The parties agree that the Bainbridge site is "tangible property" under the policy. Further, the evidence indisputably shows that Schnabel's original inadequate SOE work made the Bainbridge site (the tangible property) "less useful"; the Bainbridge site had to be shut down while Schnabel revised its SOE system, causing significant project delays. Finally, Schnabel had to "adjust" its original SOE work to make the site safe and allow construction to continue, which restored the Bainbridge site to full use. As such, the damages at issue also are damages incurred because of property damage to Impaired Property.

Schnabel argues that its SOE revisions made in response to the Stop Work Order were not "adjustments" as the term is understood in the policy, but instead were "additional work." This position stretches the bounds of logic. Any repair, replacement, adjustment, or removal of original work is, by definition, "additional" work that goes beyond the original work that required such repair, replacement, or adjustment. Consequently, if the Court were to credit Schnabel's argument and hold that any "additional work" *is not* also "repair, replacement, adjustment or removal," then this exclusion could never apply. Because the Court must construe every contract provision to have meaning, Schnabel's argument must fail.

Schnabel next argues that *Newark Insurance Co. v. Acupac Packaging, Inc.*, 328 N.J. Super. 385, 400 (App. Div. 2000), requires that a jury determine whether the Bainbridge site constitutes impaired property. *See* ECF No. 91 at 3. Schnabel misreads the case. There, the parties vigorously disputed whether the impaired property, as a factual matter, *could have been* restored to use. Consequently, this genuine issue of material fact had to be put before the jury.

10

Here, it is undisputed that the Bainbridge site *was* restored to use after Schnabel adjusted its SOE work—the site was ultimately put to its intended function as a 17-story apartment complex. Unlike *Newark Insurance*, therefore, no genuine issue exists as to whether the Bainbridge site was impaired property.

Second, as to damage arising out of the insured's inadequate work, it is undisputed that Schnabel's initial SOE work was inadequate or deficient because the work caused the White Flint property damage and significant delays to the Bainbridge project. Schnabel argues, however, that the claimed losses were the result of the County's Stop Work Order, not Schnabel's "work." In Schnabel's view, this means that the damage to the White Flint property "proximately caused" the delay, and so Exclusion D cannot apply. Schnabel misapprehends the exclusion's terms. Exclusion D extends to property damage "arising out of" a defect in the insured's work. Schnabel's SOE work caused the property damage that directly led to the Stop Work Order. But for the deficiencies in Schnabel's SOE work that led to the White Flint damage, Montgomery County would have had no reason to issue the Stop Work Order. When viewing the facts most favorably to Schnabel, therefore, the claimed losses "arose" from Schnabel's defective work, and so Exclusion D applies.

Schnabel's reliance on *Flomerfelt v. Cardiello*, 202 N.J. 432 (2010), does nothing to upset this analysis. ECF No. 91 at 2. There, the New Jersey Supreme Court defined the term "arising out of" to mean, at minimum, an injury which "'originates in,' 'grows out of' or has a 'substantial nexus' to [an] excluded act." *Id.* at 456. The Court rejected the argument that "arising out of" could mean that an injury "is connected in any fashion, however remote or tangential, to [an] excluded act." *Id.* Applying *Flomerfelt*'s teachings here, the Stop Work Order clearly "grew out of" and had a "substantial nexus" to Schnabel's deficient SOE work. In

11

fact, the Order was lifted only after Schnabel revised its SOE work, and it was this SOE revision that caused Bainbridge's construction-delay damages, as well as the delay costs incurred by Turner and Schnabel. Following *Flomerfelt*, the claimed damages "ar[ose] out of" Schnabel's work, and this element of Exclusion D is satisfied. Accordingly, even when viewing the evidence most favorably to Schnabel, the Court is constrained to conclude that Exclusion D reaches the losses claimed in this case.

Finally, Schnabel contends that the claimed losses fall under the exception to Exclusion D, which reads: "[The Exclusion] does not apply to the loss of use of other property arising out of sudden and accidental physical injury to . . . Your Work after it has been put to its intended use." *See* ECF No. 91 at 3. This argument, raised by Schnabel for the first time at the motions hearing, also fails. This exception requires that Schnabel's work ("Your Work") suffer a "sudden or accidental physical injury." No record evidence demonstrates Schnabel's SOE work suffered injury. Even Schnabel admits that the soldier piles installed as part of the SOE system did not need to be repaired. *See* ECF No. 71-1 at 40. Moreover, this exception also requires that the sudden and accidental injury occur *after* the work has been put to its intended use. But the record demonstrates that the events triggering the claimed losses occurred during Schnabel's SOE work, not after the work had been put to its purpose, and Schnabel has not generated any evidence to the contrary. When construing the facts most favorably to Schnabel, the Court finds no evidence supporting that the exception to Exclusion D applies. Summary judgment must be granted in National Union's favor.

## IV. CONCLUSION

For the reasons stated above, the Court GRANTS National Union's motion for summary judgment and DENIES Schnabel's motion for summary judgment. Because the Court finds that

summary judgment in favor of National Union is appropriate, the issues of bad faith in claims handling, recovery for attorneys' fees, and offset need not be addressed. Additionally, National Union's motions to strike Schnabel's experts (ECF Nos. 72, 73, 74), are denied as moot. A separate Order follows.

6/12/2018
Date

/S/
Paula Xinis
United States District Judge